

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| CYNTHIA JEAN NUGENT, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:04-CV-0256 |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant.[1] | § | |

# REPORT AND RECOMMENDATION
## TO AFFIRM THE DECISION OF THE COMMISSIONER

Plaintiff CYNTHIA JEAN NUGENT brings this cause of action pursuant to 42 U.S.C. § 405(g), seeking review of a final decision of defendant MICHAEL J. ASTRUE, Commissioner of Social Security (Commissioner), denying plaintiff's application for a term of disability, and disability benefits. Both parties have filed briefs in this cause. For the reasons hereinafter expressed, the undersigned United States Magistrate Judge recommends the Commissioner's decision finding plaintiff not disabled and not entitled to benefits be AFFIRMED.

## I.
## THE RECORD

Plaintiff applied for disability insurance benefits under Title II of the Social Security Act on September 10, 2002 and for supplemental security income benefits under Title XVI of the Act

---

[1] On February 12, 2007, Michael J. Astrue was sworn in as the Commissioner of Social Security. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Mr. Astrue should be substituted as the defendant in this suit.

on September 24, 2002. (Transcript [hereinafter Tr.] 49-51, 181-186).[2]  Plaintiff alleges an onset date of October 1, 2000 (Tr. 49, 181) due to low back pain. (Tr. 16, 66, 68, 69). It was determined at the administrative level that plaintiff had not engaged in substantial gainful activity since her alleged onset date. (Tr. 16). Plaintiff was born July 11, 1952, (Tr, 49, 181) and the record shows she completed high school. (Tr. 72). According to plaintiff's Work History Report, and as determined at the administrative hearing, plaintiff's past relevant work, within the past fifteen (15) years, includes work as a security guard and work as a landscape specialist. (Tr. 57, 229).

The Social Security Administration denied benefits initially and upon reconsideration. An administrative hearing was held before ALJ William F. Nail on December 16, 2003. (Tr. 208-238). On April 8, 2004, ALJ Nail rendered an unfavorable decision, finding plaintiff not disabled and not entitled to benefits at any time relevant to the decision. (Tr. 15-21). The ALJ found that plaintiff suffered from low back pain and that while such impairment was "severe" within the meaning of the regulations, it was not severe enough to meet or medically equal, either singly or in combination, one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. (Tr. 17). The ALJ concluded plaintiff retains the residual functional capacity (RFC), "to perform light work that allows for a sit/stand option, requires no excessive standing or walking and requires only simple one or two step tasks." (Tr. 18, 20 Finding No. 6). Based on this RFC, and upon vocational expert (VE) testimony, the ALJ found plaintiff could not return to work she had performed in the past, but could perform other work that exists in

---

[2]As noted by both parties, plaintiff previously filed for benefits on January 28, 1998 with the same onset date alleged herein. Such application was denied at all administrative levels.

significant numbers in the regional and national economies. (Tr. 21, Finding No. 11). The ALJ thus concluded plaintiff was not under a disability at any time through the date of his decision.

Upon the Appeals Council's denial of plaintiff's request for review on August 5, 2004, the ALJ's determination that plaintiff is not under a disability became the final decision of the Commissioner. (Tr. 5-7). Plaintiff now seeks judicial review of the denial of benefits pursuant to 42 U.S.C. § 405(g).

## II.
## STANDARD OF REVIEW

In reviewing disability determinations by the Commissioner, this Court's role is limited to determining whether substantial evidence exists in the record, considered as a whole, to support the Commissioner's factual findings and whether any errors of law were made. *Anderson v. Sullivan*, 887 F.2d 630, 633 (5th Cir. 1989). To determine whether substantial evidence of disability exists, four elements of proof must be weighed: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history. *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (citing *DePaepe v. Richardson*, 464 F.2d 92, 94(5th Cir. 1972)). If the Commissioner's findings are supported by substantial evidence, they are conclusive, and the reviewing court may not substitute its own judgment for that of the Commissioner, even if the court determines the evidence preponderates toward a different finding. *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980). Conflicts in the evidence are to be resolved by the Commissioner, not the courts, *Laffoon v. Califano*, 558 F.2d 253, 254 (5th

Cir. 1977), and only a "conspicuous absence of credible choices" or "no contrary medical evidence" will produce a finding of no substantial evidence. *Hames v. Heckler*, 707 F.2d at 164. Stated differently, the level of review is not *de novo*. The fact that the ALJ <u>could</u> have found plaintiff to be disabled is not the issue. The ALJ did not do this, and the case comes to federal court with the issue being limited to whether there was substantial evidence to support the ALJ decision.

### III.
### ISSUES

The ALJ determined plaintiff to be not disabled at Step Five of the five-step sequential analysis. This Court's review is limited to whether there was substantial evidence in the record as a whole supporting a finding plaintiff retained the ability to perform other work that exists in significant numbers in the regional and national economies, and whether the proper legal standards were applied. Contending there is not substantial evidence to support this finding, plaintiff presents the following issues:

1.  The final administrative decision is not supported by substantial evidence specifically:

    A.  The ALJ erred in his determination that petitioner's testimony lacked credibility;

    B.  The ALJ erred in his determination that petitioner's RFC qualified her for light work subject to limitations; and

    C.  The ALJ erred by giving little or no weight to the findings and opinion of plaintiff's treating physician, Dr. Basil Younis.

(Plaintiff's Brief at 1). Because issue number 3 is the critical issue in this case, it will be addressed first.

## IV.
## MERITS

### A.
### Dr. Younis - Treating Physician

Plaintiff argues the ALJ gave little or no weight to the findings and opinions of plaintiff's treating physician Dr. Basil Younis. Review of the relevant medical records shows plaintiff was first treated by Dr. Younis at the Golden Plains Community Hospital in Borger, Texas on April 2, 2001 when he ordered a stress test. In the "Procedure Note" following the test Dr. Younis stated, "The patient has had no symptoms. Had a normal hypertensive response to exercise. There was no chest pain." (Tr. 103). In the "Conclusion" portion of the document it states, "Negative stress test for EKG changes...Adequate stress test." (*Id*.). The medical records then show plaintiff was seen by Dr. Younis between August of 2001 and October of 2001. The doctor's physician notes state as follows:

**08-28-01** - "A 49 YOF [year old female] who comes in today for a physical examination. The patient will be scheduled for multiple back surgeries for herniated disks by Dr. Shaffer in Amarillo. The patient has been experiencing symptoms of numbness of both lower extremities that is associated with some cramping....Patient has some decreased vibration sense in both lower extremities and no Babinski reflexes." (Tr. 109-110)

**09-12-01** - "A 49 YOF [year old female] who comes in today for a F/U visit. The patient is complaining of back pain that hurts her all the time. She states her feet feel like they are 'falling off.' She also complains of hurting while lying down and numbness in both lower extremities. The patient has been seeing a Chiropractor on and off over the last few years, which according to her, the adjustments have been helping except for the last few times she has not noticed improvement." (Tr. 107). Labs were ordered, plaintiff was told to keep taking ibuprofen, and it was noted the doctor was going to schedule plaintiff for physical therapy. (Tr. 107-108).

**9-17-01** - Dr. Younis ordered an x-ray which was conducted this date and read by Dr. Nelson. The report indicates, "There is slight bulging of the annuli at L4-5 and L5-S1. There is no definite disc herniation at that or any other level. There is mild spinal stenosis at L3-4 and L4-5 due to facet joint hypertrophy and hypertrophy of the ligamentum flava. No bony destructive lesions are seen." (Tr. 101).

**10-30-01** - "Chief complaint: A 49 YOF [year old female] who comes in today to discuss MRI

results. She is having a significant amount of pain in her back. The patient's MRI shows no definite disk herniation. There is mild bulging of the annuli at L4, L5 and L5 S1. There is mild spinal stenosis at L3, L4 and L4, L5 due to facet joint arthropathy and hypotrophic of the ligament flavum. The patient is having pain in both lower extremities that impair her ability to ambulate. The patient has no other significant concerns." (Tr. 106). Plaintiff was prescribed Flexeril (a muscle relaxant) and Hydrocodone for pain and referred to Dr. Daneshfar for possible joint injections. (*Id*.).

**12-12-01** - "The patient has a Hx [history] of multiple injections in her back by Dr. Daneshfar and she is currently doing much better." Assessment: "Patient currently doing well with injections for her chronic LBP." (Tr. 105).[3]

The record in this case also contains a one page document referenced by the ALJ as Exhibit 3F/35 at Tr. 151. The document appears to be dated either 10/21 or 11/21 and although not entirely clear, the year appears to be 2002.[4] The document is entitled "Physician's Statement" and appears to be a state generated document to assist the state Department of Human Services in assessing whether plaintiff qualifies for food stamps. In fact, in the document the "Food Stamp Section" is checked and included in such section the doctor has checked "Cannot work: disabling factor...Physical" after which he has hand written, "chronic low back pain." (Tr. 151). The document was not found in Dr. Younis' records. Instead, it was submitted as part of Exhibit 3F, the records from the Acute and Chronic Pain and Spine Center in Amarillo, Texas.

> The ALJ discussed Dr. Younis' treatment and this particular document stating,
>
> Medical records from the claimant's treating physician, Basil A. Younis, M.D., reveal that the claimant has been treated for low back pain secondary to facet arthropathy. He prescribed pain medications and recommended epidural steroid injections. The claimant underwent steroid injections on two occasions and on December 12, 2001, she reported that she as doing well with the injections. There

---

[3] It appears from the record plaintiff saw Dr. Deneshfar on November 27, 2001 (Tr. 128-133) after which he ordered injections which were administered on November 29, 2001, January 9, 2002 and January 17, 2002. (Tr. 119, 121).

[4] The year could be interpreted as 2000 however, it does not appear plaintiff was a patient of Dr. Younis until 2001 making the date 2002 seem more likely.

> are no further medical records from Dr. Younis to document continued treatment for her back pain (Exhibits 2F and 3F).
>
> ...
>
> I have also considered the opinion of the treating physician, Basil A. Younis, M.D., as expressed in Exhibit 3F/35 that the claimant cannot work due to chronic low back pain. Social Security Regulations provide that the opinion of a treating physician is entitled to controlling weight if it is well supported by the objective medical evidence and is not contrary to other substantial evidence in the record. However, Dr. Younis has provided no treatment records or progress notes to support his conclusion. The most recent records from Dr. Younis are dated December 12, 2001, and indicate that the claimant is treated for back pain, but note no physical restrictions associated with her back pain. These medical records reveal that Dr. Younis never placed any restrictions on the claimant regarding walking, standing, sitting, lifting or working.
>
> In addition, the opinion of Dr. Younis is entirely inconsistent with the objective medical findings and the opinions of the other examining physicians. Thus, while I do consider the opinion of Dr. Younis, I give greater weight to the other opinions as they are more consistent with the objective medical findings and the claimant's overall daily functioning (SSR 96-2p).

(Tr. 17, 18). Obviously, the ALJ discounted Dr. Younis' finding that plaintiff was unable to work and instead considered the doctor's treatment notes which the ALJ found to be consistent with the findings of other examining physicians. Dr. Younis noted on December 12, 2001 that plaintiff was "doing well" with her injections. (Tr. 105). Further support that plaintiff's condition was improved is found in the January 8, 2002 report where Dr. Daneshfar noted, "Pt. [patient] states last injections provided much relief for her." (Tr. 125). The medical records also indicate plaintiff was treated by Dr. Kent Gray, chiropractor, on November 14, 15, 16, 17, 20, 21, 22, 27, 29 of 2000; December 1, 5, 7, 12, 14, 19, 22 of 2000; and January 2, 11, 19 of 2001. (Tr. 156-166). By December 5, 2000 and December 7, 2000 Dr. Gray noted in his "Objective" findings that as to the digital and motion palpation of the lumbar spine, "This finding is 70% improved." (Tr. 166). Finally, plaintiff was examined at the request of the Texas Rehabilitation

Commission on December 20, 2002 by Dr. Grace Stringfellow. Her medical report stated,

> X-rays of the lumbar spine revealed narrowing of the L5-S1 interspace. No other abnormalities noted. She also completed an MRI of the lumbar spine on September 17, 2001 at Golden Plains Community Hospital. MRI of the lumbar spine revealed no definite disc herniation with mild bulging at L4-5 and L5-S1 with mild spinal stenosis at L3-4 and L4-5.
>
> ...
>
> On manual muscle testing, she demonstrated normal strength in her bilateral upper and lower extremities. On sensory examination, she demonstrated normal sensation to pinprick and light touch in the bilateral upper and lower extremities except for decreased sensation in the left lateral calf and foot. Reflex examination revealed brisk symmetrical reflexes 2/4 bilateral biceps, triceps, brachioradialis and patella with 1/4 bilateral Achilles. No pathologic reflexes are elicited. She has no evidence of Horner's, Hoffman's Babinski's or clonus. Range of motion of the lumbar spine reveals forward flexion 56°, extension 16°, right lateral bending 30°, and left lateral bending 20°.
>
> She is independent with sitting, standing, walking, lifting light objects, and carrying and handling objects. She has adequate hearing and speech. She has no limitation with her gait but has difficulty with heel and toe walking. She demonstrated full weight bearing status of her bilateral upper and lower extremities. She requires no assistive devices for mobility or ambulation. She uses fair biomechanics with bending and picking up objects. She has limitation with lumbar spine range of motion as noted above. She has no sensory, motor or reflex deficit. She has no evidence of a deficit in the radicular distribution. She has no noted atrophy, motor or reflex changes.
>
> Cynthia Nugent has a history of chronic lumbar pain. She would be limited to light to medium work responsibilities avoiding repetitive bending and lifting greater than 20-30 pounds.

(Tr. 167-168). The question of whether plaintiff was disabled in the Social Security context is a unique issue and is to be determined by the ALJ. In this case, the ALJ discounted the one document completed by plaintiff's treating physician Dr. Younis indicating plaintiff could not work and found Dr. Younis' conclusion of inability to work inconsistent with Dr. Younis' objective findings as well as the findings of other treating and examining physicians. (Tr. 18).

Although the findings and opinions of treating physicians are entitled to great weight, they are not unassailable. The ALJ is responsible for weighing the evidence and was entitled to make the determination he made and discount the treating physician's opinion, especially in light of clinical evidence to the contrary. Here, Dr. Younis' treatment notes from August 2001 through December 2001 are inconsistent with the "inability to work" assessment submitted in connection with plaintiff's food stamp application. There are no treatment records from Dr. Younis subsequent to the December 2001 assessment that plaintiff was doing well with the injections. Conflicts such as these are for the ALJ to resolve and this Court cannot substitute its judgment. Plaintiff's third issue is without merit and should be denied.

B.
RFC Determination

Plaintiff next argues the ALJ determination that petitioner retains the residual functional capacity to perform other work existing in significant numbers in the national or local economy is not supported by substantial evidence. More specifically, plaintiff argues the ALJ erred in his determination that petitioner's RFC qualified her for light work subject to limitations. In this regard, examining physician Dr. Stringfellow determined plaintiff's limitations would limit her to light to medium work responsibilities avoiding repetitive bending and lifting greater than 20-30 pounds. On January 28, 2003, Dr. M. Dolan completed a residual functional capacity (RFC) assessment on plaintiff. In the RFC Dr. Dolan determined plaintiff could occasionally lift and/or carry (including upward pulling) 20 pounds; could frequently lift and/or carry (including upward pulling) 10 pounds; could stand and/or walk (with normal breaks) for a total of about 6 hours in an 8-hour workday; could sit (with normal breaks) for a total of about 6 hours in an 8-hour

workday; could push and/or pull (including operation of hand and/or foot controls) to an unlimited degree other than as shown for lift and/or carry; had postural limitations in that she could only occasionally climb, balance, stoop, kneel, crouch, and crawl; and that she had no manipulative, visual, communicative or environmental limitations. (Tr. 171-178). In his RFC determination, Dr. Dolan noted he considered treating or examining source statements regarding plaintiff's physical capacities and that none of the source conclusions about plaintiff's limitations or restrictions differed significantly from his own. (Tr. 177). Finally, Dr. Dolan noted Dr. Stringfellow's recommendation of no stooping with maximum weight lifting of 20-30 pounds. (*Id*.). Plaintiff appears to argue that the findings of Drs. Stringfellow and Dolan do not constitute substantial evidence sufficient to support the ALJ's RFC determination and that the ALJ failed to incorporate the opinion of treating physician Dr. Younis and the records from the Acute & Chronic Pain and Spine Center (which includes treatments/injections by Dr. Daneshfar and Dr. Kim Muncrief). In his opinion, ALJ Nail, Jr., determined plaintiff retains, "the residual functional capacity to perform light work that allows for a sit/stand option, requires no excessive standing or walking and required only simple one or two step tasks." (Tr. 18). The ALJ posed this hypothetical to the VE who testified these limitations would prevent plaintiff's past relevant work in the landscape business and would erode the job base in the security guard business. (Tr. 229-230). The VE further testified however, that a person with such limitations would be able to perform light, unskilled work as either a photocopy machine operator or a parking lot attendant. (Tr. 231). The VE testified the sedentary job of final assembler would also be available as would the light, semiskilled job of merchant patroller. (Tr. 231-232). When the ALJ altered the

hypothetical to include the increased lifting abilities found by Dr. Stringfellow, the VE testified such would not alter his opinion. (Tr. 232). The objective medical evidence, as discussed above, is consistent with the opinion of Dr. Stringfellow who examined plaintiff. Additionally, the RFC evaluation completed by Dr. Dolan was based upon Dr. Stringfellow's report and the objective medical evidence. These two opinions constitute substantial evidence because they are based, at least in part, on the objective medical findings in the record. In light of Dr. Younis' December 2001 finding of improvement, the ALJ was within his discretion in discounting the subsequent "disabled" finding which, based upon the evidence of record, was made approximately ten (10) months after Dr. Younis ceased treatment. A physician's opinion that a claimant is disabled or unable to work is not the type of opinion to be given controlling weight. *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003). There was sufficient evidence to support the ALJ's RFC finding and such finding did not constitute reversible error. Plaintiff's second claim is without merit and should be denied.

## C.
### Plaintiff's Credibility

Finally, plaintiff argues ALJ erred in his determination that petitioner's testimony lacked credibility. The credibility assessment of witnesses, including a claimant, is particularly within the province of the ALJ and the Court cannot substitute its judgment for the ALJ's unless that determination has no evidentiary support. Here, not only did the ALJ find plaintiff's statements as to her limitations not credible, he cited the medical evidence he considered in making this assessment. In particular he stated, "[W]hile the claimant alleges severe disabling back pain,

objective findings on physical examination and x-ray and MRI studies have been minimal." (Tr. 17). As set forth above, the objective medical evidence, from plaintiff's treating and examining physicians, appears to be consistent with the determination. The ALJ was entitled to rely on this evidence and consider plaintiff's treating physician opinions as compared to the clinical testing. (Tr. 17-18). Plaintiff's first claim is without merit and should be denied.

## V.
## CONCLUSION

This plaintiff clearly suffers from lower back pain. The question is whether she is "disabled" due to the pain, or whether she can work in spite of it. There is no objective test that can resolve this question and, in the context of this appeal, the gist of this case is found at page 4 of the ALJ opinion. (Tr. 18). There the ALJ summarized the evidence and gave adequate reasons for making the findings he did. Whether these findings are absolutely correct or whether they are subject to challenge is not the issue. Whether this Court disagrees with the ALJ's finding or believes plaintiff is in fact disabled is not the issue. The only issue is whether the ALJ's findings are supported by substantial evidence, as that term is defined. Here, the ALJ's findings do have sufficient evidentiary support and the determination of not disabled is not reversible.

## VI.
## RECOMMENDATION

THEREFORE, for all of the reasons set forth above, it is the opinion and recommendation of the undersigned to the United States District Judge that the decision of the

defendant Commissioner finding plaintiff not disabled and not entitled to a period of disability benefits be AFFIRMED.

## VII.
## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 25th day of October 2007.

_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

### * NOTICE OF RIGHT TO OBJECT *

Any party may object to these proposed findings, conclusions and recommendation. In the event a party wishes to object, they are hereby NOTIFIED that the deadline for filing objections is eleven (11) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(B), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(D). When service is made by mail or electronic means, three (3) days are added after the prescribed period. Fed. R. Civ. P. 6(e). Therefore, any objections must be filed **on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b); R. 4(a)(1) of Miscellaneous Order No. 6, as authorized by Local Rule 3.1, Local Rules of the United States District Courts for the Northern District of Texas.

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).